Subcontract Agreement

*Name of Job:*
Southwest Brooklyn Marine Transfer Station
1824 Shore Parkway, Brooklyn, NY 11214

PRISMATIC
DEVELOPMENT CORPORATION
60 US HIGHWAY 46, FAIRFIELD, NJ 07004
(973) 882-1133 / (973) 882-1132 FAX

Project#S216-399A

| P-177 | S-002 REVISED |
|---|---|
| Job No. | Contract No. |

All correspondence pertaining to this Agreement shall be forwarded in duplicate to the address shown opposite.

THIS AGREEMENT, made and executed this 8TH day of MAY, 2014
by and between C.D.E. AIR CONDITIONING COMPANY, INCORPORATED
321 – 39TH STREET, BROOKLYN, NY 11232-2903
(718) 788-1040 / (718) 788-2046 FAX
Joseph Azara Jr.; josepha@cdeair.com
Brian J. Azara; briana@cdeair.com

hereinafter designated as the "Subcontractor", and PRISMATIC DEVELOPMENT CORPORATION, a Corporation organized and existing under the laws of the State of NJ, hereinafter designated as the "Contractor"

WITNESSETH

Whereas Prismatic Development Corporation is the General Contractor under a prime contract with The City of New York, Department of Design & Construction, Division of Public Buildings under the terms of which Prismatic Development Corporation is obligated to construct the project therein described pursuant to the plans, specifications, addenda, amendments and prime contract documents pertaining thereto; and

Whereas, it is the intention of the parties hereto to enter into a subcontract agreement for a portion of the said work as hereinafter described: Heating, Ventilating and Air Conditioning

NOW THEREFORE in consideration of a sum of Eight Million Dollars and no cents.
($8,000,000.00) DOLLARS,

the Subcontractor hereby covenants and agrees to furnish all materials, labor, tools, equipment and services for, and perform and complete in place in a good, workmanlike substantial manner to the complete satisfaction of the Contractor, all the following described work and construction:

A) C.D.E. Air Conditioning Company, Incorporated hereby agrees as stated above to provide all necessary labor, materials, equipment and services required for a complete and safe installation of all work as described in Specification Section 11140 entitled "Vehicle Exhaust System"; ~~Section 11142 entitled "Fluid Dispensing System"; Section 11211 entitled "Service Water System"; Section 11377 entitled "Compressed Air Equipment";~~ Section 15050 entitled "Basic Mechanical Materials & Methods"; ~~Section 15051 entitled "Ductile Iron Pipe";~~ Section 15052 entitled "Steel & Stainless Steel Pipe"; ~~Section 15053 entitled "Copper Pipe"; Section 15056 entitled "Pipe Couplings"; Section 15058 entitled "Hose Reel Assemblies";~~ Section 15060 entitled "Hangers & Supports"; Section 15071 entitled "Vibration Control"; Section 15076 entitled "Piping & Equipment Identification"; Section 15081 entitled "Piping Insulation"; ~~Section 15111 entitled "Valves 4-inch and Larger"; Section 15112 entitled "Valves smaller than 4 inches"; Section 15120 entitled "Interior & Exposed Piping Schedules"; Section 15121 entitled "Pipe Expansion & Seismic Fittings"; Section 15122~~



| SUB | CONT |
|---|---|
| [initials] | [initials] |

entitled "Meters & Gages"; Section 15184 entitled "Refrigeration Piping & Specialties"; Section 15191 entitled "Diesel Fuel Piping"; Section 15540 entitled "Fuel Fired Heaters"; Section 15550 entitled "Breechings, Chimneys & Stacks"; Section 15551 entitled "Chimney Automation System"; Section 15670 entitled "Condensing Units"; Section 15720 entitled "Air Handling Units"; Section 15730 entitled "Packaged Air Conditioning Units"; Section 15761 entitled "Air Coils"; Section 15765 entitled "Terminal Heat Transfer Units"; Section 15771 entitled "Electric Heat Tracing Systems"; Section 15810 entitled "Ductwork"; Section 15815 entitled "Duct Insulation"; Section 15820 entitled "Ductwork Accessories"; Section 15830 entitled "Fans"; Section 15850 entitled "Air Outlets and Inlets"; Section 15900 entitled "HVAC Controls"; Section 15946 entitled "Air Monitoring"; Section 15950 entitled "Testing, Adjusting & Balancing", as modified by Addendums and all as shown on the drawings as prepared by Greeley & Hansen, 111 Broadway, Suite 2101, New York, NY 10006.

Prismatic Development has very serious minority participation requirements for this project imposed by The City of New York, Department of Design & Construction, Division of Public Buildings, as well as an internal moral commitment to embrace the spirit of the WBE/MBE Laws and Regulations. Accordingly Prismatic Development expects C.D.E. Air Conditioning Company to make the maximum reasonable effort to include and employ both Women and Minority Business Enterprises wherever and whenever practical in fulfilling this order.

B) It is understood and agreed that this contract consists of and includes the following Contract Documents:

CONTRACT DOCUMENTS:

Addendum: No. 1 dated September 12, 2012
No. 2 dated September 26, 2012
No. 3 dated October 18, 2012
No. 4 dated November 2, 2012

Specifications: dated July 10, 2012

Drawings: dated June, 2012

C) It is understood that the work of this contract includes but is not limited to the following items of work:

1. All work as described in Paragraph A above.

D) This contractor shall guarantee his work in accordance with the contract documents, codes, etc., and shall execute a guarantee form as part of this agreement. Complying with Article 24 of the Utilized NYC Standard Construction Contract, 1 percent of the total Subcontract amount will be withheld for a period of one year after substantial completion.

E) The sequence, scheduling and installation of all items of work included in this agreement shall be performed in accordance with the documents and the directives of the Contractor's Project Superintendent.

F) It is understood and agreed that all shop drawings, samples and catalogs will begin to be submitted to this office within **20 days** of execution of this contract.

G) It is understood and agreed that prior to any work commencement on site, this Subcontractor will supply proof of insurance coverage of types and with limits as specified in the Contract Documents.

H) It is understood and agreed that this Subcontractor will submit a complete payment breakdown prior to his first payment request, to be used for billing purposes each month.



| SUB | CONT |
|---|---|
| [initials] | [initials] |

I) This subcontractor shall ~~cleanup~~ consolidate all refuse, rubbish and debris caused by his workmen or resulting from work within at select locations ~~and center pile on each level~~ for removal by others.

J) It is understood and agreed that this contract is exempt from Sales Tax. Certificate attached.

K) This Subcontractor shall coordinate his work with the work of all other trades and will be responsible to protect the work and equipment of other trades in addition to his own while performing his work.

L) It shall be the responsibility of this Subcontractor to repair and/or replace any defective material and/or workmanship in connection with his work and perform any Punchlist items of work that may be required to produce an acceptable job.

M) It is understood and agreed that certified payrolls (six copies) must be submitted each month along with your request for partial payment, certifying that wages contained therein are not less than those determined by the Secretary of Labor for each mechanic to the work he performed. All work to be performed with Union Labor.

N) It is understood that prior to final payment, evidence of payment to major subcontractors and materialmen will be supplied by this subcontractor.

O) It is understood and agreed that this subcontractor shall comply with all applicable Federal, State, and local laws, statues, rules and regulations related to Prevailing Wage and Equal Employment/Affirmative Action.

P) This subcontractor fully understands and agrees that any subcontractors to it performing portions of the work under this agreement subject to Article 13 of this subcontract will be fully bound to all the terms and conditions of the Contract Documents and this subcontract, including all General Contract Language pertaining to wage scale, Affirmative Action, payment of subs, suppliers, etc.

Q) It is understood and agreed that this subcontractor will submit a schedule of the dates on which all shop drawings, catalogs, etc., will be furnished, and dates showing the delivery of all such items. Such schedule shall be in compliance with the requirements set forth by the General Contractor and overall project schedule.

R) It is understood that the Subcontractor will comply with all particular items listed and be fully cognizant of special areas within, such as but not limited to Advertisement Information for Bidders, Proposal, Standard Construction Contract; Time Provisions, Labor Provisions, Partial and Final Payments, Miscellaneous Provisions, General Conditions, Prevailing Wage Rates/Labor Law 220; General Requirements, Equal Employment Opportunity, No Discrimination, Affirmative Action Programs, Minimum Wage Rates, Extra Work Orders, Shop Drawings, Catalog Cuts/Samples, Substitutions, Workmanship, Inspections & Rejections, Certifications, Safety Provisions, Daily Reports, Signs, Permits, Inspections, Warranties, Record Drawings, Temporary Utilities & Services, Progress Schedule, Safety Requirements, Hours of Work, Construction Staging & Phases, Maintenance of Traffic and Work Areas Protection, Appendix, Schedules, Geotechnical Report, Bonds, Construction Schedules and Sequence, Permits, American Goods and Products Exemption of State Sales, Use Taxes and Federal Excise Taxes; Time of Completion; Work harmoniously in all respects with all parties; Approval of Subcontractor; Indemnify and Hold Harmless; Prohibited Procedure and Waste Materials Disposal; Quality Control and Testing; Table of Contents; Bid Submission Checklist; Sample of Forms to be Completed Upon Execution of Contract: Insurance, Integrity Affidavit, Disclosure Form, Form of Contract, Initial Project Workforce Report; General Conditions & Contract Supplemental General Conditions: Contract Components; The Owner, The Contractor, Time; Prosecution and Progress of Work, Subcontractors, Changes in Work, Insurance and Bonds, Suspension of the Work, Default and Termination, Substantial Completion and Final Acceptance and Completion, Liquidated Damages, Payment and Contract Completion, Protection of Persons and Property, Documents and Records, Risk of Loss and Indemnification, Claims and Dispute Resolution, Legal Relations and Miscellaneous Provisions, Warranties; Supplementary Conditions; Code of Ethics; Drawing List, Summary of Work; Allowances; Alternates; Unit Prices; Field Engineering; Change Order Procedure; Coordination; Cutting & Patching; Pre-Construction Conference; Project Meetings; Submittals; Schedules and Reports; Photographs; Testing Laboratory Service; Temporary Facilities; Storage



| SUB | CONT |
|---|---|
| [initials] | [initials] |

and Protection; Products and Substitutions; Contract Closeout; Final Cleaning; Project Record Documents; Operations & Maintenance Data; Warranties & Bonds, comply with Project Labor Agreement.

S) It is understood and agreed that there are no exceptions to this contract unless otherwise noted below:

Concrete, Painting, Fire Sprinklers, Grouting, Roofing, Barge, Dust Suppression & Odor Control System, Plumbing, Pollution Liability and Marine Protection Insurance, Gas Piping, Performance Bond Cost, Rubbish Removal, Cleanup (except as noted in Item I, Field Office, Site Safety Personnel (it is understood CDE will comply with Safety Requirements), Permits and Certifications, Installation of Electric heaters, Louvers installation of Electric Heat Trace & Chimney Automation Wiring.

T) It is understood this contract includes but is not necessarily limited to the following:

It is understood C.D.E. Air Conditioning Company provides the Electric Heaters and Electric Heat Trace and the installation of same is by others. C.D.E. will consolidate ~~center pile~~ all rubbish and debris at each level only. The removal of same and dumpsters is by others.

U) It is understood and agreed that this Subcontractor must utilize work site Laborers, Workers, and Mechanics who have been certified as having completed a 10 hour OSHA Course in Construction Safety and Health, complying with Labor Law 220-h.

V) Prompt Payment:

The Prompt Payment provisions of the PPB Rules in effect at the time of the bid will be applicable to payments made under this contract. the provisions require the payment to Contractor of interest on payments made after the required payment date, except as set forth in the PPB Rules.

The Contractor shall submit a proper invoice to receive payment, except where the Contract provides that the Contractor will be paid at predetermined intervals without having to submit an invoice for each scheduled payment.

Determination of interest due will be made in accordance with the PPB Rules.

If the Contractor is paid interest, the proportionate share of that interest shall be forwarded by the Contractor to its Subcontractor(s).

The Contractor shall pay each Subcontractor or Materialman not later than seven (7) days after receipt of payment out of amounts paid to the Contractor by the city for Work performed by the Subcontractor or Materialman under this Contract.

If Contractor fails to make any payment to any Subcontractor or Materialman within seven (7) days after receipt of payment by the City pursuant to Section 43.5 herein, then the Contractor shall pay interest on amounts due to such Subcontractor or Materialman at a rate of interest in effect on the date such payment is made by the Contractor computed in accordance with Section 756-b (1)(b) of the NY General Business Law. Accural of interest shall commence on the day immediately following the expiration of the seventh day following receipt of payment to the Contractor by the City and shall end on the date on which payment is made.

The Contractor shall include in each of its Subcontracts a provision requiring each Subcontractor to make payment to each of its Subcontractors or suppliers for Work performed under this Contract in the same manner and within the same time period set forth above.



| SUB | CONT |
|---|---|
| [initials] | [initials] |

FURTHER, it is expressly understood and agreed by and between the parties hereto as follows:

1. EXECUTION: This Agreement is signed and executed by a legal representative of the Subcontractor, authorized to bind the Subcontractor, be it individual, partnership or corporation, to all the terms of this Agreement. Should this Agreement, because of the manner of execution, be not legally binding upon the Subcontractor for any reason whatsoever, all work performed under this Agreement shall be performed at the risk of the Subcontractor, and, should this Agreement be voided due to improper execution, the Subcontractor hereby agrees to waive all claims for compensation for work performed.

2. WAIVER: No provisions of this Agreement shall be held to be waived by the Contractor by reason of any act, whatsoever, or in any manner other than by an express waiver thereof, in writing, signed by the Contractor.

3. PLANS, SPECIFICATIONS, ETC.: The entire plans, specifications, addenda, amendments and prime contract documents, if any, as mentioned herein, are made and declared to be a part of this Agreement, and all work performed and materials, equipment and services furnished by the Subcontractor, under this Agreement, must and shall be in strict conformity to, and in full compliance with the provisions of the said plans, specifications, addenda, amendments and prime contract documents. The Subcontractor represents that he has thoroughly examined said plans, specifications, addenda, amendments and prime contract documents, and is fully familiar therewith. In the event of any dispute as to the meaning of any part of said plans, specifications, addenda, amendments and prime contract documents, the same shall be determined by the Contractor, which determination shall be final and binding on the Subcontractor.

4. RIGHTS, OPTIONS, RESPONSIBILITIES, ETC.: The Contractor hereto shall have the same relative rights, options and privileges under this Agreement, as against the Subcontractor hereto, as are secured to the Owner under said plans, specifications, addenda, amendments and prime contract documents, and shall have the right to exercise the same towards the Subcontractor hereto, in the same manner as the said Owner may exercise like rights, options and privileges against the Contractor hereto under said plans, specifications, addenda, amendments and prime contract documents. The Contractor certifies that it has posted a 100 percent (100%) payment and performance surety bond with a responsible surety company guaranteeing, among other things, the payment of all labor and materials furnished in the prosecution of the work provided for in this contract. Accordingly, the Subcontractor does hereby agree that no Municipal or Mechanic's Lien or stop notice shall be filed or maintained against the project involved, whether against the lands or buildings and further agrees in the event that any Municipal or Mechanic's Liens or claims are filed by anyone in relation to the labor and material of the Subcontractor, the Subcontractor agrees, within two (2) days after notice from the Contractor, to institute proceedings for the discharge of such Municipal or Mechanic's Liens and to have the same discharged with five (5) days from the date of filing of the notice, and in the event of the failure of the Subcontractor so to do, the Contractor may cause such Municipal or Mechanic's Liens to be discharged and the expense thereof, including any deposit by the Contractor and the amount of any obligation assumed by the Contractor by bond, indemnify or otherwise, in and about such discharge, as well as its counsel fees in connection therewith, are to be charged to and paid by the Subcontractor. Subcontractor hereby waives and releases all lien or right of lien now existing or that may hereafter arise for work or labor performed or material furnished under this agreement under any lien laws upon the structure in which the Work is being or will be done, the land upon which the same is situated, and upon any money or moneys due or to become due to Contractor, and agrees if so required, to furnish a good and sufficient waiver of lien in form and substance satisfactory to Contractor from any or all persons and corporations furnishing labor or materials under Subcontractor, for the structure and the land upon which the same is situated. The Subcontractor, nevertheless shall have the right to seek payment from the Contractor and/or the bonding company. Further, all liabilities incurred, and obligations assumed, by the Contractor hereto under and by virtue of said plans, specifications, addenda, amendments and prime contract documents, shall, in turn, devolve upon, and be discharged by the Subcontractor hereto, so far as they arise in connection with the work, labor, services or materials to be furnished and delivered under this Agreement, including all general and special conditions, it being understood and agreed that the Subcontractor shall be accountable and responsible to the Contractor hereto in all respects and particulars, to the same extent and in the same manner as the Contractor is accountable and responsible to the said Owner under said plans, specifications, addenda, amendments and prime contract documents.

5. CLAIMS FOR EXTRAS: The Subcontractor shall not claim, and the Contractor shall not pay to the Subcontractor any additional sums of money over and above the amount as stipulated and set forth in this Agreement for any materials, workmen, equipment or services whatsoever to perform the work as specified herein, unless the legally authorized representatives of the Owner certify, in writing, to the Contractor that said claim is beyond the scope and intent of the plans, specifications, addenda, amendments and prime contract documents and the amount of compensation which will be paid by the Owner for said claim, and unless the authorized representative of the Contractor shall direct the Subcontractor, in writing, stipulating the scope of the extra work to be performed and the amount of compensation to be paid by the Contractor for said work, the Subcontractor shall not be entitled to any claim or recovery of any kind hereunder, unless the same shall first be allowed to the Contractor hereto by the Owner. Furthermore, it is specifically understood and agreed that the Contractor has the absolute right, with the approval of the Owner or its authorized representative, to substitute any material of whatever character, nature or description, in place of the specified in the contract documents, provided such material is "equal" to that specified in the plans and specifications which substituted material shall be incorporated into the project by the Subcontractor. Should such substitution result in any savings in cost to the Subcontractor, then and in that event, the Contractor shall be entitled to an equitable credit in a sum to be negotiated between the parties and the Subcontractor hereby agrees that the contract price shall be reduced accordingly. Should it appear that no savings in cost results from such substitution, then and in that event, such materials shall be incorporated into the project at no change in contract price.

6. DELAYS: The Subcontractor shall perform its work so as not to delay hinder or damage the work of others on the job site, and shall repair or pay for any and all damage as determined by the Contractor and shall keep up with the schedule of progress as set up by the Contractor and as may be corrected and modified by Contractor during the course of the work. Further, if the Subcontractor at any time during the progress of said work, neglects or refuses to supply sufficient tools, equipment, workmen, or materials, for any cause whatsoever, as determined by the Contractor, or delays its work and or the work of others as determined by the Contractor, the Contractor, may at its election, provide the same after three (3) day's notice, in writing. If, after the service of three (3) day notice, the Subcontractor shall fail to return to work or continues to delay the work, in the opinion of the Contractor, then the said Contractor may complete the work, and the expense thereof as well as any other damages to which the Contractor may be entitled under Section 20 of this Agreement and without limitation thereto shall be deducted from any compensation due the Subcontractor under this Agreement. If



| SUB | CONT |
|---|---|
| ȣra | MV |

the expense of completion exceeds the original contract price, then the Subcontractor shall be liable to the Contractor for such expense including the cost and expense, if any, of collection. The notice in writing herein referred to may be served personally on the Subcontractor or his Agent or mailed by certified mail to the office of the Subcontractor at the address above stated.

7. BONDS: Within five (5) days after the execution of this Agreement and prior to the commencement of work hereunder, Prismatic Development Corporation has the option to require a Performance and Payment Bond. If Prismatic Development Corporation exercises this option for the Subcontractor to provide, then Prismatic Development Corporation will pay the cost of **$96,000. as additional to the contract value** in addition to the contract price, the Subcontractor shall furnish and deliver to the Contractor, separate Performance and Payment Bonds each in the sum of 100% (100 percent) issued by a responsible Surety Company acceptable to the Contractor and approved by the Contractor as to form and substance. Should the Subcontractor fail, neglect or refuse to comply with the provisions of this paragraph, then and in that event, this Agreement, at the option of the Contractor may be cancelled on three (3) days notice in writing to the Subcontractor, who shall be held liable for such damages, if any, as the Contractor may suffer as a result thereof.

8. PROOF OF PAYMENT OF OBLIGATIONS: The Subcontractor, at any time or times prior to completion and acceptance of the project, and with 7 days after request by the Contractor, shall furnish the Contractor evidence in whatever form the Contractor may require that all obligations of persons or firms performing work and/or supplying materials, equipment or services to the Subcontractor as well as all Federal, State and local taxes and obligations of whatsoever kind and character charged to or incurred by the Subcontractor in the performance of his Subcontractor have been met, paid, satisfied or discharged. The Subcontractor at the request of the Contractor shall also be required to furnish to the Contractor a statement under oath setting forth the names and addresses of all persons or firms supplying labor, services, equipment or materials of any nature to the Subcontractor on this project with a clear indication of the amount of money still due and unpaid to such persons or firms.

9. RELEASES: The Subcontractor shall furnish and execute or cause to be executed within seven (7) days after request by the Contractor and in any form designated by the Contractor, releases and acknowledgments of payment from all persons or firms supplying materials or performing work, labor or services of any nature to the Subcontractor as well as releases, requisitions and acknowledgments of payment from the Subcontractor to the Contractor in such form as may be required by the Contractor whether under oath or otherwise.

10. HOLD HARMLESS: The Subcontractor agrees to indemnify, defend and hold the Contractor harmless from any claims, disputes, or lawsuits brought against the Contractor for any reason whatsoever which may arise out of any act of the Subcontractor, its servants, agents, or employees, and all expenses of the Contractor which may be incurred in connection with said claim, dispute, or lawsuit including reasonable attorney's fees shall be chargeable to and paid by the Subcontractor.

11. RETAIN SUFFICIENT FUNDS: The Subcontractor hereby authorizes the Contractor to retain sufficient funds, in addition to retainage withheld until final completion and acceptance of the work, to satisfy any claims, debts, or obligations arising out of the work performed by the Subcontractor hereunder for the labor, materials or equipment supplied therefore of which the Contractor has knowledge. Said funds are to be released upon, receipt by the Contractor of sufficient evidence in whatever form the said Contractor may require that the claim, debt or obligation has been met, paid, satisfied or discharged, and the Contractor will be held harmless from any manner of debt, claim, dispute or lien arising out of the performance of this Subcontract.

12. NON-COMPLIANCE: The Contractor further reserves the right to withhold all or any part of partial payments, in addition to retained percentage withheld, until final completion, due to the Subcontractor, for non-compliance with any of the terms of this Agreement, and the same shall be withheld until such time as said non-compliance has been corrected to the satisfaction of the Contractor.

13. NON-ASSIGNABLE: This Agreement, or any part thereof, or any monies now due or which may hereafter become due, shall not be assigned, transferred, or sublet by the Subcontractor, nor shall the Contractor be liable to any assignee, transferee, or sublessee, without the written consent of the Contractor, and no such written consent shall release the Subcontractor from any obligation hereunder. The Subcontractor shall submit for the approval of the Contractor the name or names of all persons, companies, or corporations to whom it intends to sublet or subcontract any of its work, as well as copies of proposed contracts between the said Subcontractor and such persons, companies and corporations, and the Contractor reserves the right to disapprove of any such person, company or corporation for whatever reason it determines sufficient. The approval of the Contract Form and/or such person, company or corporation to whom the Subcontractor intends to sublet a part or parts of its contract, shall not under any circumstances constitute a contractual relationship between such party and the Contractor and no payment shall be made to the Subcontractor for any work performed by any such person, company or corporation who has not been approved in writing by the Contractor.

14. LABOR CONDITIONS: The Subcontractor agrees to comply with and conform to all labor conditions and practices prevalent in the area in which the work is to be performed, subject to all Federal and State laws, rules and regulations, and further agrees that only mechanics skilled in their trades shall be employed in the execution of the work to be performed under this Agreement. The Contractor, may at its option, require the Subcontractor to discharge any incompetent or undesirable employee and the Subcontractor hereby agrees to comply with such directive.

15. GENERAL CONTRACTORS RIGHT TO TERMINATE: If the Subcontractor neglects to carry out the Work in accordance with the Contract Documents and in a good and workmanlike manner, without delays, or fails to complete the Work by the Completion Date, or is in default in the performance of any term or condition of the Contract Documents, then the General Contractor may, at its option, without prejudice to any other right or remedy, terminate this Subcontract upon not less than three (3) days' written notice to the Subcontractor and its surety, if any. The General Contractor may then take possession of all materials, tools and equipment and employ such means as it deems necessary to complete the Work. In such case, the Subcontractor shall not be entitled to receive any further payment until the Work has been completed. If the unpaid balance of the Subcontract Sum exceeds the actual cost of completing the Work, including liquidated damages and all other recoverable damages, the excess shall be paid to the Subcontractor. If the actual cost exceeds the unpaid balance, the Subcontractor and/or its surety, if any, shall pay the difference to the General Contractor. This obligation shall survive the termination of the Subcontract. The General Contractor may also terminate this Subcontract at any time, in whole or in part, for its own conveniences and without cause, if the General Contractor determines it is in its own best interest to do so. In such case, the Subcontractor shall only be entitled to payment for that portion of the Work actually performed prior to said termination. In the event that a termination by the General Contractor of this Subcontract for cause is ultimately determined to be improper for any reason, it shall then be treated as termination for convenience as set forth hereinabove. In no event shall Subcontractor be entitled to recover profit with respect to work that is unperformed at the time of termination.



| SUB | CONT |
| --- | --- |
| [initials] | [initials] |

15A. GENERAL CONTRACTORS SPECIAL RIGHT TO TERMINATE: In the case of m/w/d/s/be Subcontract the Contractor reserves the right to terminate said Subcontract at any time during the course of the work that the Subcontractor loses its 'special' status, or if for any reason Contractor is unable to claim full credit for said special Subcontract under the terms of the Contract Documents, in this case Subcontractor will be entitled only to

payment for work performed to the date of termination. In no event shall Subcontractor be entitled to recover profit with respect to work that is unperformed at the time of termination.

16. STORAGE OF MATERIALS: All materials on the job site to be used in the performance of the work under this Subcontract shall be stored by the Subcontractor in a safe, secure and proper manner and the Subcontractor shall assume full and absolute responsibility for the safety and protection of same. Any loss incurred shall be the responsibility of the Subcontractor, regardless of circumstances, and shall be replaced by the Subcontractor immediately upon notification by the Contractor, and at no additional cost to the Contractor regardless of whether payment for said materials has been made to the Subcontractor by the Contractor. Further, any materials or equipment delivered and stored on the job site by the Subcontractor or its subcontractors or suppliers, for incorporation into the work shall not be removed from the job site without the written consent of the Contractor. The Subcontractor shall not be entitled to requisition payment for such materials stored on the job site unless and until same is incorporated into the project and approved for payment by the Contractor. The responsibility of the Subcontractor for materials used by itself shall continue in full force and effect even after such materials are incorporated into the project and accepted by the owner. The acceptance of the project shall in no way be deemed to relieve the Subcontractor of his responsibility in connection with his workmanship or the quality of the materials, which shall survive the acceptance and continue in full force and effect as set forth in the prime contract documents to like extent as the responsibility of the Contractor continues to the Owner.

17. MATERIALS, SAMPLES, ETC.: Samples of all materials to be incorporated into the job and shop drawings, if required, shall be submitted to the Contractor as directed for approval within the time schedule called for by the Contractor. All materials, supplies or equipment to be furnished by Subcontractor and installed or incorporated in the Work shall be free from the rights of vendors under conditional bills of sale, chattel mortgages or any other encumbrances of any kind and nature whatsoever, and upon delivery thereof at the site of the Work, title thereto shall pass immediately to the Owner, free from all liens and encumbrances and subject only to the right of the Subcontractor and/or Contractor to utilize the same in completing the Work. Subcontractor hereby warrants good title to all materials, supplies or equipment installed or incorporated in the Work.

18. PAYMENT OF TAXES: The Subcontractor agrees to assume all responsibility for the payment of any and all taxes of whatsoever kind and character including all Federal, State and Municipal taxes, withholdings and contributions whether measured by the salaries or wages of any of its employees or otherwise including but not limited to all sales and use taxes, if any, which taxes withholdings and contributions are all specifically included as part of the Subcontractor's price for the performance of this contract. The Subcontractor agrees to promptly pay all of such Federal, State and Municipal taxes, withholdings and contributions and to furnish documentary evidence of such payment to the Contractor whenever so requested. The Subcontractor further agrees to indemnify, save and hold harmless the Contractor for any claim or claims for payment which may be assessed against the Subcontractor under authority of the rules, statutes and laws of the Federal and State Governments under which the work described in this Agreement is to be performed. Further, for the work to be performed, the Subcontractor agrees (if not already qualified to make immediate application to become a registered employing unit under the Unemployment Compensation Act of the State where the work hereunder is to be performed for the duration of this Agreement and in every respect to comply with and conform to all the rules, regulations and laws of the United States of America and the State where the work hereunder is to be performed. If the Subcontractor is not required to pay or bear the burden or obtains a refund or drawback, in whole or in part of any Federal or State tax, duty, interest, or penalty which is included in the contract price pursuant to the terms of this Agreement then and in the event the contract price shall be correspondingly decreased. The Contractor shall be privileged to deduct the amount of such decreases from monies due or to become due to the Subcontractor including monies represented by the retainage. This provision shall survive the contract and should the Subcontractor receive any benefit or benefits from a refund, drawback, or tax waiver of any kind or character, Federal or State, subsequent to the final completion and acceptance of this Contract and the release of all retained monies, then and in that event the Subcontractor shall be obliged to pay to the Contractor within three (3) days after receipt of such refund, drawback, or tax waiver the amount thereof by mailing the same by registered mail to the principal office of the Contractor at 60 Route 46, Fairfield, New Jersey 07004.

19. INSURANCE POLICIES:

A. The Subcontractor shall take out pay for and carry policies of contingent liability insurance and general liability insurance which shall be in amounts and form as listed in Article B below in companies approved by and satisfactory to the Contractor, and the Subcontractor shall comply in all respects with the laws of the state where the work hereunder is to be performed, relating to compensation for accidental injuries or death suffered in the course of employment. All insurance policies shall be comprehensive in form and so drawn as to fully protect both parties hereto. Further, the Subcontractor assumes all liability for personal injuries or damages suffered by employees of the said Subcontractor, or the agents, servants or employees of its subcontractors if any, or employees under its control or direction, and for damages or injuries to any person or property through the negligence or illegal acts of the said Subcontractor or its agents, servants, etc., and will indemnify, defend and save harmless the Contractor from any and all claims, losses or costs which the Contractor may or shall sustain by reason of such damages or injuries. Further before work is commenced the Subcontractor shall deposit such policies of insurance with the Contractor, and shall furnish the Contractor with Certificates of Insurance from all such insurance companies, certifying that they have respectively issued policies in the value required by the Contractor, that they acknowledge that the policies so issued cover the Subcontractor, as well as the Contractor as required by this Agreement and specifically naming Prismatic Development Corporation as an insured on the policy and that they shall not cancel or change same without first giving the Contractor ten (10) days prior notice by registered mail of intention to cancel. Should the Subcontractor fail, neglect or refuse to comply with the provisions of this paragraph, then and in that event, the Contractor, at its option, may cancel and annul this Agreement holding the Subcontractor responsible for such damages as may be incurred thereby or, in the alternative, at its option may secure such insurance as may be necessary to meet its requirements, charging the cost thereof to the Subcontractor and reimbursing itself for such cost out of the funds due to the Subcontractor under the terms of its agreement.

B. Insurance Requirements

The Subcontractor shall purchase and maintain minimum insurance of the following types of coverage and limits of liability:

1) Commercial General Liability (CGL) with limits of Insurance of not less than $2,000,000 each occurrence and $4,000,000 Annual Aggregate.

a) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project. Aggregate is applicable separately to this project.



| SUB | CONT |
|---|---|
| [initials] | [initials] |

b) CGL coverage shall be written on ISO Occurrence form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.

c) General Contractor, Owner and all other parties required of the General Contractor, shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 (11 85) or CG 20 10 (10 93) AND CG 20 37 (10 01) or CG 20 33 (10 01) AND CG 20 37 (10 01) or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It shall apply as Primary and non-contributing Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.

d) Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work.

2) Automobile Liability
a) Business Auto Liability with limits of at least $1,000,000 each accident.
b) Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
c) General Contractor, Owner and all other parties required of the General Contractor, shall be included as insureds on the auto policy.

3) Commercial Umbrella
a) Umbrella limits must be at least $10,000,000.
b) Umbrella coverage must include as insureds all entities that are additional insureds on the CGL.

4) Workers Compensation and Employers Liability
a) Employers Liability Insurance limits of at least $2,000,000 each accident, $2,000,000 for bodily injury by accident, and $2,000,000 each employee for injury by disease.
~~b) U.S. Longshore and Harborworkers Compensation Act Endorsement shall be attached to the policy.~~
~~c) Where applicable, the Maritime Coverage Endorsement shall be attached to the policy~~

~~5) Valuable Papers and Records Insurance a minimum limit of $500,000.~~

~~6) Additional Marine/Specialty Insurance~~
~~a) Pollution/Environmental Liability with limits of $2,000,000. per occurrence and $4,000,000. Aggregate, if applicable.~~
~~b) Marine Protection and Indemnity with limits of $1,000,000. per occurrence and $2,000,000. Aggregate, if applicable.~~
~~c) Collision Liability/Towers Liability with limits of $2,000,000. per occurrence and $4,000,000. Aggregate, if applicable.~~
~~d) Marine Pollution Liability with a limit of $1,000,000. per occurrence.~~

<u>Waiver of Subrogation</u>
Subcontractor waives all rights against Contractor, Owner and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above. Subcontractor's Workers Compensation policy has WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT with Contractor, Owner and Architect listed on SCHEDULE.

Attached to each certificate of insurance shall be a copy of the Additional Insured Endorsement that is part of the Subcontractor's Commercial General Liability Policy. The City of New York is named as additionally insured with specific language including its officials and employees. Also additionally insured is Greeley and Hansen, LLC and URS/The LiRo Group, A Joint Venture. These certificates and the insurance policies required shall contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days prior written notice has been given to the Contractor.

C.

To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Owner, Contractor, Architect, and consultants, agents and employees of any of them (individually or collectively, "Indemnity") from and against all claims, damages, liabilities, losses and expenses, including but not limited to attorneys' fees, arising out of or in any way connected with the performance or lack of performance of the work under the agreement and any change orders or additions to the work included in the agreement, provided that any such claim, damage, liability, loss or expense is attributable to bodily injury, sickness, disease or death, or physical injury to tangible property including loss of use of that property, or loss of use of tangible property that is not physically injured, and caused in whole or in part by any actual or alleged:

- Act or omission of the Subcontractor or anyone directly or indirectly retained or engaged by it or anyone for whose acts it may be liable; or
- Violation of any statutory duty, regulation, ordinance, rule or obligation by an Indemnitee provided that the violation arises out of or is in any way connected with the Subcontractor's performance or lack of performance of the work under the agreement.

The Subcontractor's obligations under this Article shall apply regardless of whether or not any such claim, damage, liability, loss or expense is or may be attributable to the fault or negligence of the Subcontractor.

In the event that an Indemnitee is determined to be any percent negligent pursuant to any verdict or judgment, then, in addition to the foregoing, Subcontractor's obligation to indemnify the Indemnitee for any amount, payment, judgment, settlement, mediation or arbitration award shall extend only to the percentage of negligence of the Subcontractor and anyone directly or indirectly engaged or retained by it and anyone else for whose acts the Subcontractor is liable.

The indemnity obligation under this Article shall not be construed to negate, abridge or reduce any other right or obligation of indemnity that would otherwise exist as to any person or entity described in this Article.



| SUB | CONT |
|---|---|
| JDa | TMV |

In any and all claims against an Indemnitee by any employee of the Subcontractor or anyone directly or indirectly retained or engaged by it or anyone for whose acts it may be liable, the indemnification obligation under this Article shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

The indemnification obligation under this Article shall not be limited in any way by the amount or type of insurance required to be provided to or for the benefit of an Indemnitee as described in Article 13 of the agreement.

20. TIME OF THE ESSENCE: Time of completion on the part of the Subcontractor is a most absolute consideration and is to be considered the essence of this Agreement. The Subcontractor shall commence work whenever so directed in writing by the Contractor and shall continue diligently to perform such work until completion or as may be directed by the Contractor in pursuance to its construction and progress schedule as may be corrected and modified by the Contractor during the course of the work. The Subcontractor shall commence work at such place or places as may be directed in writing by the Contractor and shall continue to pursue such continuity and progress schedule as may be determined by the Contractor as herein above indicated. Should the Subcontractor fail, neglect or refuse to maintain its schedule or work as required by the Contractor, causing a delay in the construction of the project as a result thereof then and in that event the Subcontractor shall be liable in damages to the Contractor for such delay, including but not necessarily limited to charges which may be incurred by the Contractor directly or indirectly under the terms of its Contract. The fact that the Contractor has furnished the Owner with a progress schedule at variance with the construction and progress schedule furnished or to be furnished to the Subcontractor shall in no way whatsoever be deemed evident as between the parties hereto and shall have no bearing whatsoever on the progress of the work to be performed by the Subcontractor as herein referred to. The Subcontractor shall perform his work solely in accordance with the construction and progress schedule furnished to him by the Contractor, which may be modified, corrected, changed, altered, or amended by the Contractor from time to time and by no other schedule whatsoever, it is distinctly understood that there shall be no right of recovery on the part of the Subcontractor against the Contractor for any damages caused by delays in the construction of the project irrespective of the cause or reasons therefore and irrespective of the fact that the Contractor may have changed, modified, corrected, altered or amended the construction or progress schedule from time to time, providing, however that where the progress of the job is unduly delayed for causes or reasons directly and solely attributable to the Contractor, then and in that event, the only remedy available to the Subcontractor for such delays shall be a reasonable extension of time to be described by the Contractor.

21. EXECUTION OF FORMS: The Subcontractor agrees to execute and deliver to the Contractor such form or forms as may be determined by the Contractor including but not necessarily limited to (1) certified copies of payrolls (2) Subcontractors Status Reports (3) Subcontractors Cost Reports (4) such other forms as the Contractor may determine voluntary in order to maintain an accurate record of costs and work progress until the final completion and acceptance thereof in addition to the execution and delivery of the forms herein referred to the Subcontractor may also be required upon the request of the Contractor to furnish such proof and documentation evidence as the Contractor may require in order to substantiate and corroborate the information contained in the forms aforementioned.

22. PAYMENT BREAKDOWN: The Subcontractor agrees to furnish the Contractor prior to starting of any work, a complete itemized breakdown of the contract price as set forth in this Agreement, satisfactory to and subject to the approval of the Contractor, for the purpose of preparing monthly progress payments. Said Contract Payment Breakdown, in satisfactory form, shall be furnished to the Contractor within five (5) days after the execution of this Contract, and the failure or neglect of the Subcontractor to do so may at the option of the Contractor result in (a) cancellation of this contract and the Subcontractor may become liable for such damages as the Contractor may sustain as a result of the Subcontractors failure to comply with the requirements herein sustained or (b) in the alternative no payment whatsoever shall become due and payable to the Subcontractor unless and until a satisfactory Contract Payment Breakdown has been furnished to the Contractor and approved by it.

23. RETAINAGE AND PAYMENTS: In consideration of the faithful performance by the Subcontractor, of the covenants and conditions in this Agreement, the Contractor agrees to make monthly partial payments of approximate estimates of the amount of work completed and materials, equipment and services furnished each month, less **5 percent** retainage to insure the faithful completion of this Agreement, on or about the 30th day of the ensuing month, provided, however, that all labor and material delivered to the job, and all taxes have been paid by the Subcontractor, and provided that the Contractor has on each such date been paid by the Owner. The reserve percentage is to be withheld by the Contractor until the said Contractor has received final completion, acceptance and payment by the Owner for the entire job. Further, the Subcontractor must submit said estimates to the field representative of the Contractor on or before the 25th day of each month of the month for which the estimate is submitted, for the approval of said field representative, before any said monthly partial payments shall be made. As a condition precedent to any payment due the Subcontractor, it shall deliver to the Contractor a release from all of its Subcontractors and Materialmen, in form satisfactory to the Contractor, as well as an affidavit as to all unpaid materialmen, labor, etc., incurred or to be incurred by the Subcontractor. Progress payments shall not be considered an acceptance of any work of the Subcontractor; the entire work being subject to final approval and inspection of the Contractor and the Owner upon completion, pursuant to the prime contract documents.

24. CONTRACT ACCEPTED IN NEW JERSEY: This contract shall not be binding upon the Contractor unless or until the same is actually accepted and signed by an executive officer authorized so to sign at the office of the Contractor located at 60 Route 46, Fairfield, New Jersey. As the project itself is in the City of New York and the contract between Contractor and Owner, which the Subcontractor is also bound to, is subject to the laws of the State of New York, accordingly the laws of the State of New York shall control this Subcontract Agreement.

25. SUBCONTRACTOR'S KNOWLEDGE: It is distinctly understood and declared by the Subcontractor that this Agreement is executed by the said Subcontractor for the consideration herein named, solely on the knowledge and information of the Subcontractor, derived from sources other than the Contractor, its agents or officers of the nature and information of the work to be performed and the means of access thereto. The Subcontractor herein declares that it has investigated all pertinent conditions relative to the performance of the work contained in this Agreement and having satisfied itself enters into the Agreement knowing the character, quantities and sources of materials to be used in performing the work, the labor conditions prevalent in the area in which the work is to be performed and has familiarized itself with all the data necessary to complete the work as stipulated in this Agreement.

26. SERVICE OF NOTICES: All notices which are required to be served under provisions of this Agreement may be served upon the designated authorized representative of the Subcontractor, or upon the Subcontractor, by mailing the same, addressed to the address appearing on the face of this Agreement.



| SUB | CONT |
|---|---|
| [handwritten initials] | [handwritten initials] |

27. CORRECTION OF DEFECTS: The Subcontractor shall, at the request of and in a manner acceptable to the Contractor, correct any defects due to faulty materials or workmanship which appears within a period of one year following final acceptance and completion of the project. The Subcontractor, upon receipt of notice in writing from the Contractor shall forthwith remove all materials and take down and remove and dismantle all condemned materials from the job site and rebuild all portions of the work which may be declared to be faulty or not in accordance with the plans, specifications, amendments, addenda and prime contract documents in all instances where the Contractor may be so advised by the Owner, or Architect, for which the work hereunder is to be performed. Under such circumstances, Subcontractor's rework, including the cost of all new materials and equipment, if necessary, shall be performed by such Subcontractor at no extra cost to the Contractor. The Subcontractor is completely responsible for all of its materials or installations for the duration of the entire job, until such time as it is formally and finally accepted by the Contractor and the Owner, in addition to the Subcontractor's duty of strict compliance with all of the other requirements of the prime contract documents relating to materials, installation and workmanship.

28. WARRANTEES AND GUARANTEES: All Subcontractor's, Manufacturers or Suppliers' warrantees and guarantees, expressed or implied, respecting any material or equipment used in or incorporated in the work, shall be deemed obtained by the Subcontractor for and in behalf of the Contractor, and the Subcontractor, if so directed by the Contractor, shall require such Manufacturers or Suppliers to execute such warrantees and guarantees in writing directly to the Contractor or Owner, as may be directed by the Contractor.

29. DEDUCTIONS FOR UNCORRECTED WORK: If the Contractor is required to allow an equitable deduction of the contract price to the Owner because it may be deemed inexpedient to correct any work not performed in accordance with the contract, then and in that event, the Contractor shall be privileged to make an equally equitable deduction from the amount due the Subcontractor for the failure to perform as aforementioned.

30. DEFINITIONS: Wherever the term "Contract Documents" or the term "Prime Contract Documents" appears in this Agreement, the same is intended to mean the Contract as well as all other documents, contracts and agreements executed or about to be executed by and between the Contractor and the Owner. A specimen copy of the contract, as well as other such documents, contracts and agreements herein referred to , is on file at the office of the Contractor and may be examined at all reasonable business hours.

31. COMPLETE AGREEMENT: This contract contains the complete agreement between the parties and may not be changed, amended or modified in any way except by agreement in writing between the parties hereto.

32. SUPERVISION AND DEVIATION: The Subcontractor agrees to give his personal attention to the work, labor and services to be performed under this Agreement and shall at all times maintain a competent supervisor at the job site subject to the approval of the Contractor to supervise the work on behalf of the Subcontractor. The Subcontractor shall immediately after execution of this Agreement, designate in writing, an official representative of the Subcontractor who will have full authority to act on any and all matters pertaining to the work to be performed under this Subcontract and whose acts shall be binding upon the Subcontractor to the fullest extent. Should the Contractor determine that the Subcontractor's supervisor is not satisfactory, for any reason whatsoever, then, and in that event, the Contractor has the unqualified right to direct the Subcontractor, in writing, to discharge such supervisor within seventy-two (72) hours and the Subcontractor does hereby agree to comply with such written directive and to furnish another supervisor who shall likewise be cloaked with full authority to act for and in behalf of the Subcontractor. Should the Subcontractor, through the direction of its supervisor or otherwise deviate in any way from the strict requirements of the plans, specifications, amendments, addenda or prime contract documents or make any installation or perform any work, labor or services contrary to the requirements of such plans, specifications, amendments, addenda or prime contract documents without first obtaining the written consent and approval of the Contractor, such deviation shall be at the sole peril and risk of such Subcontractor who may then be required to remedy such deviation or conflict to the complete satisfaction of the General Contractor and the Owner at no cost whatsoever to the General Contractor, which remedial work shall be done within a time schedule as may be directed by the General Contractor in order to preclude any dislocation of its production schedule.

33. SUBCONTRACTOR INSOLVENCY: In addition to the other rights as contained herein, if the Subcontractor should be adjudicated a bankrupt, insolvent or placed in receivership, or should proceedings be instituted by or against the Subcontractor for bankruptcy, insolvency, receivership, agreement of composition or assignment for the benefit of creditors, or if this subcontract or the interest of the subcontract hereunder passes to another by virtue of any court proceedings, writ of execution, levy, sale or by operation of law, the Contractor may, if the Contractor so elects at any time hereafter, terminate this subcontract upon giving to the Subcontractor or to any trustee, receiver, assignee or any other person in charge of or acting as custodian of the assets or property of the Subcontractor five (5) days notice in writing of the Contractor's intention to do so. Upon the giving of such notice, this subcontract shall end on the date fixed in such notice and the Contractor may take possession of the premises, and all the materials, tools and appliances thereon, and finish the work itself or through others by whatever method it deems expedient. In such event the Subcontractor shall not be entitled to receive any further payments until the work is finished. If the unpaid balance of the Subcontract price shall exceed the expenses of finishing the work, including compensation for additional managerial and administrative services, such excess shall be paid to the Subcontractor. If such expenses shall exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

34. CLEAN UP: The Subcontractor agrees to consolidate ~~keep the job site clean of~~ all rubbish, debris, scrap material and refuse caused or created by the Subcontractor to select areas ~~and to remove same from the job site~~ as soon as possible upon request of the Contractor, ~~this also includes obligation of Subcontractor to keep all buildings clean as herein indicated~~. Should the Subcontractor fail, refuse or neglect to consolidate ~~clean up as directed~~ within twenty-four (24) hours after notice from the Project Superintendent then, and in that event, the Contractor at its option may perform such ~~clean up~~ consolidation service and back-charge the same to the Subcontractor and reimburse itself for such back-charge from the next payment due to the Subcontractor. Furthermore, the Contractor at its option may cancel and annul this Agreement on failure of the Subcontractor to comply with the provisions of this paragraph.

35. COVENANT AGAINST CONTINGENT FEES: The Subcontractor covenants, warrants, and represents that he has not paid any fee, commission, bonus or other consideration to any person, persons, company or corporation for securing this subcontract, other than a fee, commission or consideration paid in the normal course of business to an established bona fide company engaged in such business or full time employee in the employ of the Subcontractor in its normal and usual course of business. Breach of this representation shall entitle the Contractor to deduct from the contract price the full amount of such fee, commission or other consideration, or at its option, the Contractor may cancel and annul this agreement holding the Subcontractor liable for such damages as it may sustain as a result thereof.



| SUB | CONT |
| --- | --- |
| [initials] | [initials] |

36. The Subcontractor agrees that it will not commence any action, whether at law or at equity, against the Contractor, or the sureties on the performance and/or payment bond, if any, given by the Contractor to the Owner because of any matter whatsoever arising out of the alleged breach of performance of this agreement, in the courts of any state other than the State of New York. It is further agreed that if any action shall be brought in the courts of the State of New York, such action shall be commenced only in the venue of the City of New York. The rights herein given the Contractor shall also be deemed for the direct benefit of the aforesaid sureties, if any, with the same force and effect as if they were parties herein. Any action must be brought within the time limited for the bringing of actions by the Contractor against the Owner as set forth in the General Contract Documents.

37. The Subcontractor shall conform to and comply with all Federal, State and local laws, rules and regulations concerning occupational health and safety including, without limitation, the requirements of the Contract Documents and the rules and regulations of the Occupational Safety & Health Act of 1970 and the Occupational Safety & Health Standards promulgated there under.

The Subcontractor further agrees to indemnify and hold the Contractor harmless from any and all costs, expenses, fines and penalties (including reasonable attorneys' fees) that may be incurred by the Contractor as the result of the Subcontractor's non-compliance with this subparagraph.

~~38. SPECIFIC CLAUSE FOR M/W/D/S/BE SUBCONTRACTORS:~~
~~A. Subcontractor agrees to immediately notify Contractor of any changes to it's status as a M/W/D/S/BE. Failure to do so will be a breach of this Subcontract Agreement.~~

~~B. Subcontractor has represented that it has been and currently is certified as an MBE, DBE, WBE, SBE or Emerging Business Enterprise under the program for certification applicable to and specifically identified in the plans, specifications, addenda, amendments and prime contract documents (the "Contract Documents"). Subcontractor has represented and agreed that it shall take all steps necessary to allow Contractor to comply with the Contract Documents with respect to MBE, DBE, WBE, SBE or Emerging Business Enterprise requirements of the Contract Documents, including providing all forms, reports, certifications or other requirements stated therein or applicable thereto. Subcontractor represents and agrees that it will perform its obligations in a manner that will allow Contractor to credit the Subcontractor's services, materials and/or equipment as applicable toward the achievement of goals for MBE, DBE, WBE, SBE or Emerging Business Enterprise requirements as stated in the Contract Documents or otherwise applicable. Subcontractor specifically represents and agrees that:~~

- ~~it will provide and actual service other than acting as an intermediary between a supplier and a customer;~~
- ~~it will perform a "commercially useful function" as defined in 49 CFR § 26.55 and/or NYC Local Law 1 (2013); and~~
- ~~otherwise performs a valuable service that qualifies for counting toward goals stated in the Contract Documents.~~

~~Subcontractor agrees that it will be responsible for and will actually perform, manage and supervise the work covered by this Subcontract and agrees that it will not sub-subcontract a significantly greater portion of the work than would be expected on the basis of normal industry practices. Subcontractor certifies that it has the technical capability and adequate resources to perform the work covered by this Subcontract. Subcontractor agrees to prepare and submit all sub-tier subcontracts and material contracts to Contractor for approval. Contractor reserves the right to review and reject any and all sub-subcontracts, equipment leases and/or use of other Contractor's personnel entered into between Subcontractor and third parties that do not conform or comply with the provisions of this section, the terms of the Contract Documents or the requirements of the Owner. Neither the approval of nor the failure on the part of Contractor to reject such arrangements shall relieve the Subcontractor of any of its obligations under this agreement. In the event it is determined that the Subcontractor fails to qualify as a MBE, DBE, WBE, SBE or Emerging Business Enterprise and/or fails to perform its obligations in a manner that will allow Contractor to credit the Subcontractor's services, materials and/or equipment as applicable toward the achievement of goals for MBE, DBE, WBE, SBE or Emerging Business Enterprise requirements as stated in the Contract Documents, such as by allowing its certification to lapse or be revoked or by failing to perform a "commercially useful function," or to otherwise comply with the Contract Documents or other requirements applicable to the Subcontractor's Work, the Contractor shall have the right to terminate the Subcontract, without penalty or liability, and Contractor may recover from Subcontractor any damages Contractor may suffer as a result of Subcontractor's failure to perform its obligations in a manner that will allow Contractor to credit the Subcontractor's services, materials and/or equipment as applicable toward the achievement of goals for MBE, DBE, WBE, SBE or Emerging Business Enterprise requirements as stated in the Contract Documents. Such remedy shall be in addition to any other remedy available to Contractor hereunder.~~



| SUB | CONT |
| --- | --- |
| [illegible initials] | [illegible initials] |

39. This Contract consists of the following pages: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and Attachment.

Note: This Subcontract Agreement is conditional upon Prismatic Development Corporation receiving an executed contract and Notice to Proceed from the City of New York, Department of Design & Construction, division of Public Buildings.

WITNESS:

C.D.E. AIR CONDITIONING COMPANY, INCORPORATED
(Subcontractor)

..........................................

By [signature]

SEAL

Name & Title... JOSEPH E. AZARA JR, PRES.

Date...... 7-7-14 ..........

WITNESS:

PRISMATIC DEVELOPMENT CORPORATION
(Contractor)

..........................................

By..........................................

SEAL

Name & Title..............................

Date..........................................



| SUB | CONT |
|---|---|
| JZA | MV |

39. This Contract consists of the following pages: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and Attachment.

Note: This Subcontract Agreement is conditional upon Prismatic Development Corporation receiving an executed contract and Notice to Proceed from the City of New York, Department of Design & Construction, division of Public Buildings.

WITNESS:

SEAL

C.D.E. AIR CONDITIONING COMPANY, INCORPORATED
(Subcontractor)

By..........................................

Name & Title... JOSEPH F. AZHCA JR, PRES

Date...... 7-7-14

WITNESS:

Karen Meyer

SEAL

PRISMATIC DEVELOPMENT CORPORATION
(Contractor)

By..........................................

Name & Title... Robert V. Gamba President / C.E.O.

Date.......... 7-10-14



| SUB | CONT |
|---|---|
| | |

# ATTACHMENT

## SUBCONTRACTOR CERTIFICATION AND AGREEMENT TO BE BOUND BY COVENANTS AND REPRESENTATIONS OF THE PRISMATIC DEVELOPMENT CORPORATION MONITORING AGREEMENT, AND CERTIFICATION OF COMPLIANCE PROGRAM

By execution of the Subcontract Agreement, Subcontractor agrees and certifies as follows:

A. Subcontractor has received, reviewed, and understands the attached "Covenants and Reservations" contained in the Prismatic Development Corporation Monitoring Agreement dated August 13, 2013 ("Monitoring Agreement"), and agrees to be bound by such covenants and representations.

B. Subcontractor has not been found to be a non-responsible vendor by the City of New York ("City"), and has not been convicted of, and is not being investigated for a crime involving lack of honesty or business integrity.

C. Subcontractor agrees to comply with the disclosure obligations of Prismatic pursuant to investigations clause contained in its City contract and subcontractor agrees to cooperate with any investigation conducted by the New York City Department of Investigation ("DOI"), including responding to requests for records, interviews and other requests for information. Subcontractor agrees to report any instance of misconduct, whether criminal or otherwise, in connection with the City contract directly and immediately to DOI.

D. Subcontractor acknowledges that Prismatic has agreed with the City of New York that Prismatic and its key employees shall use their best efforts to assist the Integrity Monitor named in the Monitoring Agreement and the City in obtaining access to past or present subcontractor, consultant, and supplier change order files (including detailed documentation covering negotiated settlements), accounts, computer records, documents, correspondence, and any other books and records in the possession of Prismatic's subcontractors, consultants, and suppliers pertaining to any contracts Prismatic may enter into with the City during the term of the Monitoring Agreement and Prismatic has agreed that at the request of the Integrity Monitor, Prismatic shall demand of its subcontractors, consultants, and suppliers any back-up material or other books, records, or other documentation that Prismatic is permitted or empowered to demand, from its subcontractors, consultants, and suppliers by the terms of Prismatic contracts with those persons and entities and shall submit said documentation received to the Integrity Monitor.

The foregoing agreements and certifications are an integral part of the Subcontract Agreement, are in addition to any and all responsibility and contractual eligibility provisions of the Subcontract Agreement, the Prime Contract and applicable law and regulations and Subcontractor represents it is in compliance therewith.



| SUB | CONT |
|---|---|
| JOA | TM |

Subcontractor acknowledges that this subcontract is subject to the approval of the Owner and representatives of the City of New York who may rely upon the subcontractor's representations herein. If any of subcontractor's representations are found to be untrue or if the approval of the Owner or of the City of New York is not obtained, this subcontract may be terminated in accordance with its terms.



| SUB | CONT |
| --- | --- |
| [initials] | [initials] |

## PRISMATIC DEVELOPMENT CORPORATION MONITORING AGREEMENT

* * *

## Article 1 COVENANTS AND REPRESENTATIONS

### A. Prismatic's Prior Conduct

1) Prismatic represents that it neither knows of nor reasonably should know of any instance where, other than the conduct described above, Prismatic, any of Prismatic's key people[1], or any of Prismatic's employees has directly or indirectly engaged in any criminal conduct or any conduct in contravention of any federal, state or local laws, regulations, rules or policies.

2) Prismatic represents that it neither knows of nor reasonably should know of any instance where, other than in connection with the conduct described above, Prismatic, any of Prismatic's key people, or any of Prismatic's employees has directly been the subject of an investigation and/or been found guilty and/or liable in connection with any conduct in contravention of any laws, regulations, rules, or policies of any federal, state or local government.

### B. Reporting Obligations

1. Prismatic represents and covenants that it shall immediately notify the City, through DOI, in the event that hereafter Prismatic and/or any of its key people: (a) are subpoenaed, interviewed, questioned, or otherwise contacted by any government agency, official, or employee in connection with any investigation or proceeding, or any alleged violation of federal, state or local law, whether of a criminal, civil, or administrative nature, and whether or not Prismatic and/or any of its key people or employees are, or are believed to be the subject or target of any such investigation or proceeding; or (b) are notified or otherwise learn that Prismatic and/or any of its key people are under investigation for any alleged violation of criminal law; or (c) are charged with any crime.

2. Prismatic further represents and covenants that it shall immediately notify the City, through DOI, in the event that hereafter Prismatic learns that any of its employees or agents: (a) are subpoenaed, interviewed, questioned, or otherwise contacted by any government agency, official, or employee in connection with any investigation or

---

[1] "Key people" or "key person" as used throughout this Agreement, means: directors, officers, shareholders of ten percent (10%) or more of Prismatic issued stock, including owners of other securities (e.g., stock options, secured or unsecured bonds, warrants and rights, etc.) that can be converted to stock that, if exercised, would constitute ten percent (10%) of the firm's issued stock; any group, individual and/or entity with the right to acquire ownership of an amount of Prismatic stock, pursuant to any stock option, arrangement, warrant, right, or otherwise, which if combined with the current holdings of such group, individual and/or entity, would constitute ten percent (10%) or more of the outstanding stock, each manager or individual participating in overall policy-making or overall financial decisions for the firm; and each person in a position to control and/or direct the firm's overall operations.



| SUB. | CONT |
| --- | --- |
| JTa | MV |

proceeding, or any alleged violation of federal, state or local law, involving or related to allegations of a lack of honesty or business integrity, whether of a criminal, civil, or administrative nature, and whether or not any of its employees or agents are, or are believed to be, the subject or target of any such investigation or proceeding; (b) are under investigation for an alleged violation of criminal law involving a lack of honesty or business integrity; or (c) are charged with any crime involving a lack of honesty or business integrity.

3. Prismatic acknowledges and understands that the City places the highest importance on the integrity and honesty of all its contractors, subcontractors, suppliers, and public servants. Prismatic further acknowledges and understands that complete and truthful answers to all questions asked on VENDEX forms, all information provided in connection with this Agreement, and all conditions set forth in this Agreement are conditions precedent to the award of any new DDC contracts or contracts with any agency of the City and to the maintenance of any existing or future contracts.

## C. Prohibited Conduct

1. Prismatic, within thirty (30) days of the date of this agreement and every twelve (12) months thereafter, throughout the term of this agreement, shall certify to the City, through DOI, that neither Prismatic nor any of its key people has or will:

a. knowingly violate any provisions of the law governing minority and woman owned business enterprises;

b. commit any fraud, or file or make any knowingly false or fraudulent reports, statements or representations, in connection with their compliance with any federal, state or local law, rule or regulation or contract requirement;

c. knowingly make a false or fraudulent statement or representation in connection with any government contract, or make any request for payment based on any such false representations;

d. knowingly misrepresent or overstate the costs of any work performed on any government contract, make any claim for payment based on any such false representations or overstatements, or file false invoices;

e. knowingly or intentionally fail to provide complete and truthful information or documents, in a timely manner, with respect to any contract between it and any governmental body or agency, where the governmental body or agency has made a request therefore pursuant to the terms of such contract, including a request made in connection with this Agreement;



| SUB | CONT |
|---|---|
| JOA | JM |

f. engage in improper or illegal conduct with labor officials, including, but not limited to, providing or offering to provide money or anything of value, including services, to a union official;

g. give or offer to give money or anything of value, including services, to a labor official or public servant with intent to influence that public servant with respect to any of his or her official acts, duties or decisions as a labor official or public servant;

h. give or offer to give money or anything of value, including services, to a labor official or public servant for any past action taken by that labor official or public servant with respect to any of his or her official acts, duties or decisions as a labor official or public servant;

i. engage in collusive or anti-competitive bidding practices;

j. conspire with anyone to perform any of the acts set forth in sections (a) to (i).

2. Prismatic shall not permit any employee to engage in such conduct described above in Article 1.C.1. Prismatic further shall not permit any person who any present or future key person of Prismatic knows to be engaging in such prohibited conduct, or knows to have engaged in such prohibited conduct, to become a key person or employee of Prismatic, nor permit any such person to otherwise exercise any control, directly or indirectly, over the operation of Prismatic, subject to any existing, valid collective bargaining agreement. Prismatic further shall refrain, in connection with the DDC contracts or any other City contracts, from hiring or shall terminate the employment of any employee, subject to the terms of any existing, valid collective bargaining agreement, upon the identification by DOI of any present or former Prismatic employee as having engaged in illegal activity or misconduct in connection with the DDC contracts or any other City contracts or having refused to cooperate with DOI in any inquiry.

3. Prismatic agrees that it will expeditiously repay the City any money or debt it may now or in the future owe when and as such debt is incurred. Failure by Prismatic to comply with this requirement shall constitute an event of default under the terms of this Agreement where Prismatic has failed to cure such violation or otherwise take appropriate legal action within ten (10) business days of receipt of written notice from the City of the debt or payment becoming due. The default provisions of this section shall not apply to any dispute over payments in connection with a City contract that have not been reduced to a judgment, lien or other legal order of a court.

Prismatic represents that in addition to prohibiting the conduct cited in Article 1.C, the company immediately upon execution of this Agreement will remove Prismatic's current General Superintendent, Peter Lodato ("Lodato"), from the position as General Superintendent, shall prohibit Lodato from working for Prismatic in any supervisory or managerial capacity, shall exclude Lodato from involvement in any and all



| SUB | CONT |
| --- | --- |
| [handwritten initials] | [handwritten initials] |

matters involving Prismatic's administration and management of its MWBE component on all existing and future public contracts and shall have a Project Manager on site daily to provide management of the construction job and oversight of personnel. The provisions of this paragraph shall not be construed to prohibit Lodato from providing technical expertise with respect to particular means, methods and manner of construction to Prismatic Project Managers on site.

**D. <u>No Organized Crime Affiliations</u>**

1. Prismatic represents and covenants that no person who Prismatic or any of its past or present key people knows to be or have been, or should know to be, or to have been, an alleged member or associate of an organized crime group, syndicate or "family" identified as an organized crime group, syndicate or "family" by a federal, state or local law enforcement or investigative agency (collectively, an "Organized Crime Group"), is now or ever has been a key person or employee of Prismatic; nor has any such person in the past exercised, nor does any such person now exercise, any control, directly or indirectly, over the operations of Prismatic.[2]

2. Prismatic shall not permit any person who Prismatic or any of its present or future key people, knows to be, or to have been, or who it or any of its present or future key people should know to be, or to have been an alleged member or associate of any Organized Crime Group to become a key person or employee of Prismatic, nor permit any such person to otherwise exercise any control, directly or indirectly, over the operations of Prismatic, subject to the provisions of any existing, valid collective bargaining agreement.

3. In the event the Integrity Monitor that is retained pursuant to Article 2 of this Agreement states in writing to Prismatic that the Integrity Monitor, after diligent investigation, has no information that a person who Prismatic is contemplating allowing to become a key person or employee, or otherwise permitting to exercise control over its operations, is alleged to be a member or associate of any Organized Crime Group, the receipt of such written statement shall be deemed evidence that Prismatic, at such time, had no knowledge of such person's alleged connection to an Organized Crime Group. Notwithstanding the foregoing sentence, in the event Prismatic has actual knowledge that a person is or has been an alleged member or associate of any Organized Crime Group, the receipt of such a written statement from the Integrity Monitor shall not constitute evidence that Prismatic had no knowledge of such person's alleged connection to an

[2] For purposes ~~of this Agreement, except as to~~ non-supervisory laborers referred or provided by a union pursuant to a lawful collective bargaining agreement, Prismatic shall be deemed to have knowledge of: (a) any statements concerning a person's alleged membership in, or association with, any Organized Crime Group appearing in any trade publication or any publication of general circulation in geographic areas in which Prismatic does business, including, but not limited to, newspapers of general circulation in such areas; (b) any public reports by local, state, or federal agencies; and (c) any criminal charges publicly filed against any persons by prosecutors having jurisdiction over the geographic areas in which Prismatic does business.



| SUB | CONT |
|---|---|
| [illegible] | [illegible] |

Organized Crime Group. In the event said Integrity Monitor states in writing to Prismatic that a person is alleged to be a member or associate of an Organized Crime Group, Prismatic shall not permit such person to become a key person or employee, or otherwise to exercise control over its operations, and Prismatic shall remove forthwith from such position any such person then employed by, or serving as a key person of, Prismatic, except where termination of an employee or refusal to hire such as individual would violate an existing, valid collective bargaining agreement. Nothing in this Agreement shall obligate any Integrity Monitor retained pursuant to Article 2 of this Agreement to issue any written statement to Prismatic with respect to a person's alleged status as a member or associate of an Organized Crime Group.

**E. <u>Prismatic's Subcontractors</u>**

1) Prismatic shall require that all its subcontractors on all City contracts agree in a signed notice or certification to be kept on file by Prismatic to be bound by the covenants and representations required hereunder for Prismatic. Such notice or certification may be included as part of the subcontract documents. In the case of a subcontractor with a subcontract of ten percent (10%) or greater of a City contract, Prismatic shall also keep on file a written record executed by Prismatic's compliance officer memorializing that the compliance officer has discussed with the subcontractor its obligations regarding integrity and ethics.

2) Prismatic will not employ any subcontractors on any City contracts that it knows or reasonably should know have been found to be a non-responsible vendor by the City or otherwise who has been convicted of, or who is being investigated for a crime involving lack of honesty or business integrity. To ensure the integrity of all subcontractors, Prismatic agrees to submit to DOI the names of all subcontractors it intends to use prior to their commencing work on City contracts, and the names of all subcontractors it is currently using on City contracts, so that DOI may conduct a vendor integrity review prior to the subcontractor commencing work or continuing work on any City contract.

3) Prismatic will advise all subcontractors in writing prior to any subcontractor commencing work on City contracts that the subcontractor must comply with the disclosure obligations of Prismatic pursuant to investigations clause contained in its City contract and that the subcontractor must cooperate with any investigation conducted by DOI, including responding to requests for records, interviews and other requests for information. Prismatic must further advise any subcontractor performing work on a City contract that the subcontractor is also required to report any instance of misconduct, whether criminal or otherwise, in connection with the City contract directly and immediately to DOI. Such advice may be provided in the subcontract documents.

* * *



| SUB | CONT |
|---|---|
| SDA | MV |

Name of Job
Southwest Brooklyn Marine Transfer Station

Brooklyn, NY

**Prismatic**
**Development Corporation**
**60 US Hwy. 46, Fairfield, NJ 07004**

P-177 — **Job No.**
S-002 — **Contract No.**

**TO** C.D.E. Air Conditioning Company, Incorporated
321 – 39th Street
Brooklyn, NY 11232-2903

**DATE** June 30, 2014

**ADDENDUM NO.S-2-1**

Gentlemen:

In connection with your Contract No. S-002, dated 5/8/14, for materials to be furnished and delivered to the Southwest Brooklyn Marine Transfer Station, Brooklyn, NY, it has been determined that in view of the necessity for changes in the work, it is necessary to modify the above referenced contract in certain particulars as follows:

Cost of Performance & Payment Bond.

Total Add: $96,000.

(over)

Subject to conditions hereinafter set forth, the Contract Price is increased in the amount of Ninety Six Thousand Dollars and no cents.

*Dollars $96,000.00*

The conditions hereinbefore referred to are as follows:

1. The aforementioned change, and work affected thereby, are subject to all contract stipulations and covenants;

2. The rights of the Buyer are not prejudiced; and

3. All claims against the Buyer which are incidental to or as consequence of the aforementioned change are satisfied.

The foregoing Addendum No.S-2-1 is satisfactory and is hereby accepted.

C.D.E. Air Conditioning Company, Incorporated
(Seller)

Date 7-7-14 By [signature]

Title PRES.

Please sign and return **both** copies. An executed copy will then be forwarded to you.

**PRISMATIC DEVELOPMENT CORPORATION**
(Buyer)

Date ______________ By ______________

Title ______________