UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
THE TRAVELERS INDEMNITY COMPANY,

                Plaintiff,

      v.

HARLEYSVILLE INSURANCE COMPANY,

                Defendant.
-----------------------------------------------------------------
HARLEYSVILLE INSURANCE COMPANY,

                Third-Party Plaintiff,

      v.

SELECTIVE INSURANCE COMPANY OF THE
SOUTHEAST,

                Third-Party Defendant.
-----------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-1089 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Travelers Indemnity Company commenced the above-captioned action against Defendant Harleysville Insurance Company on March 1, 2021, seeking (1) a declaration that Harleysville is obligated to defend and indemnify nonparty Prismatic Development Corp ("Prismatic") in connection with a lawsuit in the Supreme Court of the State of New York, County of Kings (the "Underlying Action"); and (2) a declaration that Harleysville is obligated to reimburse Plaintiff for the defense costs Plaintiff has paid on behalf of Prismatic. (Compl., Docket Entry No. 1.) On September 22, 2021, Harleysville filed a third-party complaint against Third-Party Defendant Selective Insurance Company of the Southeast ("Selective"). (Third-

Party Compl., Docket Entry No. 12.) On February 9, 2022, Harleysville filed an Amended Third-Party Complaint against Selective seeking declarations that (1) Selective's commercial general liability insurance policy affords primary and non-contributory coverage to Prismatic for the claims at issue in the Underlying Action; (2) coverage afforded to Prismatic by Harleysville's commercial general liability policy is excess to all other valid and collectable insurance available to Prismatic; and (3) Selective is obligated to reimburse Plaintiff for attorneys' fees, disbursements, and expenses incurred defending Prismatic in the Underlying Action without contribution from Harleysville. (Am. Third-Party Compl., Docket Entry No. 23.)

The parties cross-move for summary judgment pursuant to Rule 56.1 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court (1) grants Plaintiff's partial motion for summary judgment, (2) grants Selective's motion for summary judgment, and (3) denies Harleysville's motion for summary judgment.

---

[1] (Pl.'s Notice of Mot. for Summ. J. ("Pl.'s Mot."), Docket Entry No. 47; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 47-1; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), Docket Entry No. 48; Def.'s / Third-Party Pl.'s Mem. in Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), Docket Entry No. 56-11; Def.'s / Third-Party Pl.'s Notice of Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 53; Def.'s / Third-Party Pl.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 53-26; Def.'s / Third-Party Pl.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 55-3; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n Mem."), Docket Entry No. 49; Third-Party Def.'s Mem. in Opp'n to Def.'s Mot. ("Third-Party Def.'s Opp'n Mem."), Docket Entry No. 50; Third-Party Def.'s Notice of Mot. for Summ. J. ("Third-Party Def.'s Mot."), Docket Entry No. 45; Third-Party Def.'s Mem. in Supp. of Third-Party Def.'s Mot. ("Third-Party Def.'s Mem."), Docket Entry No. 45-32; Third-Party Def.'s Reply in Supp. of Third-Party Def.'s Mot. ("Third-Party Def.'s Reply"), Docket Entry No. 46; Def.'s / Third-Party Pl.'s Mem. in Opp'n to Third-Party Def.'s Mot. ("Def.'s Opp'n to Third-Party Def."), Docket Entry No. 57-4.)

## I. Background

The following facts are undisputed unless otherwise noted.[2]

### a. Insurance policies

#### i. Plaintiff's insurance policy

Plaintiff "issued a policy providing Prismatic . . . with commercial general liability and employee benefits liability coverage . . . for the policy period of June 10, 2016 to June 10, 2017 (the 'Travelers Policy')." (Pl.'s 56.1 ¶ 1.) "Subject to certain terms and conditions, the Travelers Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident." (*Id.* ¶ 2.) The policy's "'other insurance' provision provid[es] that coverage under the Travelers Policy is 'excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy.'" (*Id.* ¶ 3.)

#### ii. Harleysville's insurance policy

Harleysville issued a commercial general liability policy to CDE Air Conditioning Co. ("CDE") for the policy period of December 1, 2016, to December 1, 2017 ("Harleysville Policy"), (*id.* ¶ 4; Def.'s 56.1 Resp. ¶ 4), which "provides coverage for bodily injury that takes

---

[2] (Pl.'s Stmt. of Undisputed Facts Pursuant to Local Civ. Rule 56.1 ("Pl.'s 56.1"), Docket Entry No. 47-2; Def.'s / Third-Party Pl.'s Response to Pl.'s 56.1 & Stmt. of Additional Material Facts ("Def.'s 56.1 Resp."), Docket Entry No. 56-12; Def.'s / Third-Party Pl.'s Stmt. of Material Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1"), Docket Entry No. 53-25; Pl.'s Response to Def.'s Rule 56.1 Counterstatement of Additional Material Facts ("Pl.'s 56.1 Resp."), Docket Entry No. 49-1; Third-Party Def.'s Rule 56.1 Stmt. of Undisputed Facts ("Third-Party Def.'s 56.1"), Docket Entry No. 45-33; Def.'s / Third-Party Pl.'s Response to Third-Party Def.'s 56.1 and Stmt. of Additional Material Facts ("Def.'s Third-Party 56.1 Resp."), Docket Entry No. 57-5; Third-Party Def.'s Response to Def.'s 56.1 ("Third-Party Def.'s 56.1 Response"), Docket Entry No. 51; Third-Party Def.'s Response to Def.'s 56.1 Response, Docket Entry No. 46-1.)

3

place during the policy period and is caused by an accident," (Pl.'s 56.1 ¶ 5). The Harleysville Policy's "additional insured" provision provides as follows:

> ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU
>
> This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A. **Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations only as specified under a written contract (for purposes of this endorsement referred to as the "written contract") that requires that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability caused, in whole or in part, by the acts or omissions of the "Named Insured", or those acting on behalf of the "Named Insured", in the performance of the "Named Insured's" ongoing operations for the additional insured only as specified under the "written contract". A person's or organization's status as an insured under this endorsement ends when your on-going operations for that insured are completed.
>
> . . . .
>
> D. **Other Insurance**
>
> 1. If specifically required by the written contract or agreement referenced in Paragraph A. above, any coverage provided by this endorsement to an additional insured shall be primary and any other valid and collectible insurance available to the additional insured shall be non-contributory with this insurance. If the written contract does not require this coverage to be primary and the additional insured's coverage to be non-contributory, then this insurance will be excess over any other valid and collectible insurance available to the additional insured.
>
> 2. Even if the requirements of paragraph 1 are met establishing this coverage as primary and the additional insured's coverage as being non-

4

> contributory, this coverage shall share with other insurance available to the additional insured which is conferred onto said person or organization by a separate additional insured endorsement.

(Harleysville Policy Part 1 of 3, at 72–73, annexed to Decl. of Amy Gross in Supp. of Pl.'s Mot. ("Gross Decl.") as Ex. B, Docket Entry No. 47-6.)

### iii. Prismatic and CDE's contracts

"On or about May 8, 2014, Prismatic, as a general contractor, entered into a subcontract with CDE (the 'Construction Subcontract') pursuant to which CDE was to perform work for a construction project at the Southwest Brooklyn Marine Transfer Station (the 'Project')." (Pl.'s 56.1 ¶ 7.) The Construction Subcontract required CDE to "take out pay for and carry policies of contingent liability insurance and general liability insurance . . . relating to compensation for accidental injuries or death suffered in the course of employment." (CDE Contract ¶ 19.A, annexed to Gross Decl. as Ex. D, Docket Entry No. 47-10.) The Construction Subcontract declared that "[a]ll insurance policies shall be comprehensive in form and so drawn as to fully protect" Prismatic and CDE. (*Id.*) In addition, the Subcontract stated that CDE:

> assumes all liability for personal injuries or damages suffered by employees of [CDE], or the agents, servants or employees of its subcontractors if any, or employees under its control or direction, and for damages or injuries to any person or property through the negligence or illegal acts of [CDE] or its agents, servants, etc., and will indemnify, defend and save harmless [Prismatic] from any and all claims, losses or costs which [Prismatic] may or shall sustain by reason of such damages or injuries.

(*Id.*) "On or about May 16, 2014, CDE subcontracted with Blue Diamond Sheet Metal ('Blue Diamond') for Blue Diamond to perform sheet metal work on the Project." (Pl.'s 56.1 ¶ 9.) "On or about July 21, 2014, Prismatic entered into a contract with . . . Solar Electric . . . to perform certain electrical work at the Project." (Third-Party Def.'s 56.1 ¶ 6.)

5

### iv. Contract between Prismatic and Solar Electric

The July 21, 2014 contract between Prismatic and subcontractor Solar Electric provides:

> A. The Subcontractor Shall take out and pay for and carry policies of contingent liability insurance and general liability insurance . . . relating to compensation for accidental injuries or death suffered in the course of employment. All insurance policies shall be comprehensive in form and so drawn as to fully protect both parties hereto. . . .
>
> B. Insurance Requirements
>
> The Subcontractor shall purchase and maintain minimum insurance of the following types of coverage and limits of liability:
>
> 1) Commercial General Liability (CGL) with limits of Insurance of not less than $2,000,000 each occurrence and $4,000,000 Annual Aggregate.
>
> . . . .
>
> (c) General Contractor, Owner, and all other parties required of the General Contractor, shall be included as insureds on the CGL, using . . . an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It shall apply as Primary and non-contributing Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.

(Def.'s 56.1 ¶ 5.)

### v. Solar Electric's insurance policy with Selective

Solar Electric was insured by Selective under a commercial policy package for the policy period of October 31, 2016, to October 31, 2017 (the "Selective Policy"). (*Id.* ¶ 6.) The commercial policy included a provision defining insureds under the policy. (*Id.* ¶ 7.) The contract also included a provision defining additional insureds under the policy.

> **Blanket Additional Insureds – As Required By Contract**
>
> A. Subject to the **Primary and Non-Contributory** provision set

> forth in this endorsement, **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your ongoing operations, "your product", or premises owned or used by you;
>
> With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
>
> This insurance does not apply to:
>
> "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional . . . services by or for you . . . .

(Selective Policy 612, annexed to Decl. of Sarah Ziolkowski in Opp'n to Pl.'s Mot. as Ex. 3, Docket Entry No. 56-3.) In addition, the policy contained a provision defining additional insureds:

> **Broad Form Venders Coverage**
>
> Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured any person or organization . . . whom you have agreed in a written contract or written agreement to add as an additional insured on your policy. Such person or organization is an additional insured only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, however the insurance afforded the vendor does not apply to:
>
> a.     "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement; however this exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement; . . . .

(*Id.* at 613.)

7

b. **Initiation of Underlying Action and subsequent events**

On December 14, 2017, Joseph Keane and Meichelle MacGregor initiated the Underlying Action against Prismatic and Blue Diamond in the Supreme Court of the State of New York, County of Kings. (Underlying Compl., annexed to Gross Decl. as Ex. E, Docket Entry No. 47-11.) The complaint in the Underlying Action alleged that on or about March 22, 2017, Keane, who was "employed by Solar Electric at the project known as the Southwest Brooklyn Marine Transfer Station," (*id.* ¶ 18), "suffered an accident while working at the . . . Marine Transfer Station," (*id.* ¶ 19), after being "struck by a piece of sheet metal and/or ductwork which fell from the ceiling area above him as [he] was working on ground-level," (*id.* ¶ 20). The complaint further alleged that the "accident occurred because the sheet-metal and/or ductwork which fell and struck [Keane] . . . was hoisted and/or secured in a careless, reckless, negligent and unsafe manner," (*id.* ¶ 21), resulting in Keane "sustain[ing] severe and permanent personal injuries," (*id.* ¶ 22). The complaint also alleged that the accident and Keane's injuries and damages were "occasioned solely by virtue of the carelessness, recklessness and negligence of [Prismatic and Blue Diamond] in the operation, supervision, maintenance and control of the aforementioned construction project." (*Id.* ¶ 23.)

In a "letter dated February 2, 2018, Prismatic notified CDE of [Keane's] alleged accident and requested that CDE defend and indemnify Prismatic in the Underlying Action pursuant to the Construction Subcontract." (Pl.'s 56.1 ¶ 13.) "On February 6, 2018, [Plaintiff] forwarded the summons and complaint in the Underlying Action and tendered Prismatic's defense to CDE by letter." (*Id.* ¶ 14.) In a letter from Harleysville to Prismatic dated March 5, 2018, Harleysville denied Prismatic's request for contractual defense and indemnification, explaining that "there is no evidence to support that CDE caused or contributed to this incident." (Mar. 5,

2018 Denial Letter 7, annexed to Gross Decl. as Ex. J, Docket Entry No. 47-16.) On or about August 31, 2018, Prismatic commenced a third-party action in the Underlying Action against CDE and Solar Electric, alleging that "it entered into a contract with Solar Electric to perform certain work at the project and asserted claims for, *inter alia*, common law and contractual indemnification." (Def.'s 56.1 ¶ 3.)

In an email from Plaintiff to Harleysville dated December 17, 2020, Plaintiff requested that Harleysville "reconsider its denial of additional insured status for Prismatic." (Dec. 17 Re-Tender Letter, annexed to Gross Decl. as Ex. K, Docket Entry No. 47-17.) In a December 22, 2020 email, Harleysville denied Plaintiff's request. (Pl.'s 56.1 ¶ 17; Def.'s 56.1 Resp. ¶ 17.) Plaintiff claims that it "has provided and continues to provide a defense to Prismatic in the Underlying Action[] and has incurred associated costs."[3] (Pl.'s 56.1 ¶ 12.)

## II. Discussion

### a. Rule 56

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (same). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v.*

---

[3] Harleysville admits only that Plaintiff "has alleged in this lawsuit that it has provided Prismatic with a defense in the Underlying Action." (Def.'s 56.1 Resp. ¶ 12.)

9

*Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (same). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (same). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)); *see also Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (same).

    b. **Duty to defend**

Plaintiff moves "for partial summary judgment seeking an order that Harleysville has a duty to defend Prismatic in the Underlying Action on a primary and non-contributory basis, and to reimburse [Plaintiff] for its past costs in defending them." (Pl.'s Mem. 6.) Plaintiff argues that Harleysville is dutybound to defend Prismatic in the Underlying Action because Keane's "bodily injury was allegedly caused, in whole or in part by Blue Diamond, a subcontractor hired by CDE that is named as a direct defendant" in the Underlying Action. (*Id.* at 7.) Plaintiff argues that these allegations "clearly satisfy the express additional insured promise in" Harleysville's insurance policy, (Pl.'s Reply 2), because "that policy language provides coverage

10

for an additional insured where the underlying injury is proximately caused by the named insured or by those acting on the named insured's behalf," (*id.* at 3–4). In support, Plaintiff makes several arguments. First, "because Blue Diamond was performing work on CDE's behalf at the [p]roject site at the time of [Keane's] injury, its status as a direct defendant that allegedly caused [Keane's] injury triggers additional insured coverage for Prismatic under the Harleysville Policy, regardless of any allegations against CDE." (*Id.* at 4; *see also* Pl.'s Opp'n Mem. 10.) Second, Plaintiff argues that whether CDE allegedly caused Keane's injuries is irrelevant. (Pl.'s Opp'n Mem. 10.) Third, Plaintiff argues that the "other insurance" provision in its insurance coverage policy requires Harleysville to reimburse it for expenses incurred defending Prismatic because Harleysville's coverage is primary to the coverage provided by Plaintiff, (Pl.'s Mem. 10–11), and its coverage, "by contrast, is excess to that of Harleysville," (Pl.'s Opp'n Mem. 13).

      Harleysville argues that the Court should deny Plaintiff's motion for summary judgment and grant Harleysville's motion for summary judgment seeking dismissal of Plaintiff's claims because Plaintiff "has failed to satisfy its burden of demonstrating that . . . Prismatic[] is entitled to primary, additional insurance coverage under the" Harleysville Policy. (Def.'s Opp'n 1.) Harleysville contends "that Prismatic is neither a [n]amed [i]nsured to [Harleysville's] policy nor was it added by scheduled endorsement as an additional insured." (*Id.* at 6.) Harleysville also argues that the Underlying Action does not "[t]rigger coverage under the Harleysville [p]olicy" because the complaint in the Underlying Action does not assert that "C.D.E.[] caused or contributed to the accident in question" and is "devoid of any allegations of negligence against . . . C.D.E." (*Id.* at 8.) In addition, Harleysville argues that it has properly denied Plaintiff's insurance coverage request because "there ha[ve] been no allegations that Blue Diamond was perform[ing] 'ongoing operations' on CDE's behalf at the time of the alleged incident giving rise

11

to the accident," thus rebutting Plaintiff's argument that Harleysville's policy applies because Blue Diamond was retained by CDE and accused of negligence in the Underlying Action. (Def.'s Reply 7–8.) Harleysville also argues that it would be "premature" for the Court to declare that Harleysville must indemnify Prismatic in the Underlying Action since that case "is still being litigated and there has been no finding of liability." (Def.'s Mem. 14–15.)

In addition to opposing Plaintiff's motion for summary judgment, Harleysville contends that Selective "is obligated to provide additional insured coverage to Prismatic and that such coverage would be primary to any coverage this Court may determine is owed to Prismatic under the Harleysville Policy," (Def.'s Opp'n 9), meaning that Harleysville "does not presently have a duty to defend or reimburse [Plaintiff] for fees allegedly incurred in the" Underlying Action, (Def.'s Mem. 16). Harleysville argues that the allegations in the complaint in the Underlying Action "trigger a duty to defend Prismatic under the Selective Policy, since Keane was injured while working as an employee of Solar Electric, SELECTIVE's named insured, at the project." (Def.'s Opp'n 13; *see also* Def.'s Opp'n to Third-Party Def. 2.) Harleysville states that Selective erred in denying coverage to Prismatic by mistakenly concluding that the "arising out of" clause in its policy "require[d] a finding of proximate causation for coverage to attach" when all that was required is that "Keane's accident was incidental to his work at the project for Solar Electric." (Def.'s Mem. 9.) In support, Harleysville notes that there has been no finding of fact in the Underlying Action that would relieve Solar Electric — and therefore Selective — of liability. (Def.'s Reply 2.) Harleysville argues that Selective's claim that Solar Electric was not the proximate cause of the injury alleged in the Underlying Action is "entirely speculative and wholly insufficient to defeat its legal obligation to provide Prismatic with a defense." (Def.'s Opp'n to Third-Party Def. 13.) Harleysville argues that the "additional insureds" provision of

12

Selective's Policy requires Selective to provide Prismatic with coverage because Keane was employed by Solar Electric. (Def.'s Mem. 11–12.) It further argues that if the Court "determine[s] that Prismatic is entitled to a defense as an additional insured cover[ed] under the Harleysville Policy," "said coverage is co-primary to that owed to Prismatic by SELECTIVE, such that SELECTIVE should be obligated to share in reimbursing [Plaintiff] for the past defense costs alleged[ly] incurred in the Underlying Action and share in all future costs of defending Prismatic." (Def.'s Reply 10.)

Selective moves for summary judgment on the grounds that its "policy make[s] clear that it only covers Prismatic as an additional insured for bodily injury 'caused in whole or in part by' Solar Electric's acts," and Prismatic is therefore not an additional insured under Selective's policy as "the evidence unequivocally demonstrates that it was the acts of Blue Diamond and not Solar Electric that caused the accident." (Third-Party Def.'s Mem. 1.) Selective argues that its policy does not provide for liability insurance for events "'arising out of the operations' of Solar Electric" because the contract between Prismatic and Solar Electric does not require such coverage and only provides for liability insurance for incidents "'caused in whole or in part by' Solar Electric's actions." (*Id.* at 12.) Selective contends that the "caused in whole or in part by" clause in the contract between Prismatic and Solar Electric requires a finding of proximate cause for additional insured coverage to arise. (*Id.* at 13–14.) Selective notes that New York courts have not interpreted "caused in whole or in part" and "arising out of" insurance contract clauses the same, holding that the former clause "required the named insured to have committed some actionable deed that was a proximate cause of the loss in the underlying suit to trigger additional insured coverage." (Third-Party Def.'s Reply 5 (citing *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.S.3d 313, 317 (2017)).) Selective argues that "Solar Electric was not the 'proximate

13

cause' of Keane's injuries," and therefore "Prismatic is not an additional insured under the Selective [p]olicy" because the allegations in the complaint in the Underlying Action "solely" attribute Keane's injuries to Prismatic and Blue Diamond. (Third-Party Def.'s Mem. 14–15.) In addition, Selective argues that "New York law is clear that Keane's mere employment by Selective's named insured Solar Electric is insufficient to show the proximate cause required for the 'caused by' additional insured standard." (Third-Party Def.'s Reply 9.)

Under New York law, an insurer's duty to defend policyholders is "exceedingly broad," and "broader than the . . . duty to indemnify." *Atl. Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co.*, 56 N.Y.S.3d 207, 209 (App. Div. 2017) (citation and internal quotation marks omitted); *see Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 93 (2d Cir. 2023) ("[A]n insurer's duty to defend is . . . distinct from [its] duty to indemnify." (quoting *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014))); *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013) ("The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage." (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005))). "[A]n insurer has a duty to defend when there is a possibility that it 'might eventually be . . . obligated to indemnify the insured under any provision of the insurance policy.'" *N. River Ins. Co. v. Leifer*, No. 22-CV-1009, 2023 WL 2978970, at *1 (2d Cir. Apr. 18, 2023) (quoting *GCS Indus., Inc.*, 720 F.3d at 82.); *see also Euchner–USA, Inc.*, 754 F.3d at 141 (noting that if there is even a "reasonable possibility of coverage," the insurer "will be called upon to provide a defense" (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). "But 'the insurer's duty to defend is not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy.'" *Golden Ins. Co. v. Ingrid House LLC*, No. 21-CV-1337,

14

2022 WL 2165252, at *3 (2d Cir. June 14, 2022) (quoting *Stein v. N. Assurance Co. of Am.*, 617 F. App'x 28, 30 (2d Cir. 2015)).

"An insurer's duty to defend . . . is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (citations omitted); *see also Emp'rs. Ins. Co. of Wausau v. Northfield Ins. Co.*, 150 F. Supp. 3d 196, 200 (E.D.N.Y. 2015). "The duty to defend remains 'even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered.'" *Euchner–USA, Inc.*, 754 F.3d at 140 (alterations omitted) (quoting *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137). While "[t]he New York Court of Appeals has eschewed wooden application of the four corners of the complaint rule," *see QBE Ins. Corp. v. Adjo Contracting Corp.*, 997 N.Y.S.2d 425, 440–41 (App. Div. 2014) (citations and internal quotation marks omitted), the extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case, *see City of New York v. Liberty Mut. Ins. Co.*, No. 15-CV-8220, 2017 WL 4386363, at *15 (S.D.N.Y. Sept. 28, 2017) (holding that "it is a 'settled rule [under New York law] that extrinsic evidence can[not] be used to defeat the duty to defend . . . [unless it is] unrelated to the merits of [the underlying] plaintiff's action.'" (citation omitted)). *See Int'l Bus. Machs. Corp.*, 363 F.3d at 148 (explaining that New York courts "allow[] an insurer to refuse or withdraw a defense if evidence extrinsic . . . 'unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage'" (citation omitted)); *Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of New York*, No. 16-CV-05916, 2018 WL 654445, at *10 (E.D.N.Y. Jan. 31, 2018) ("Importantly, the issues and extrinsic evidence present are wholly irrelevant to the principal merits of the [u]nderlying [a]ction, as required by the Second Circuit to disclaim the duty [to defend]." (citation omitted)); Ellen S. Pryor, *The Tort Liability Regime and*

15

*the Duty to Defend*, 58 MD. L. REV. 1, 24 (1999) ("Most courts disallow the simultaneous adjudication of the duty to defend on the basis of extrinsic facts when those facts overlap with facts at issue in the tort suit."); *see also MIC Gen. Ins. Co. v. Allen*, 697 F. App'x 717, 720 (2d Cir. 2017) (considering undisputed extrinsic evidence that did not overlap with the merits inquiry of the underlying action in evaluating duty to defend). "[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage," *Great Am. Ins. Co. v. AIG Specialty Ins. Co.*, No. 21-CV-1298, 2022 WL 17587851, at *1 (2d Cir. Dec. 13, 2022) (quoting *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020)), but "[t]he duty to defend cannot be established through a 'strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable,'" *Napoli v. Nat'l. Sur. Corp.*, No. 22-CV-1516, 2023 WL 2320332, at *2 (2d Cir. Mar. 2, 2023) (quoting *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006)).

### i. Harleysville has a duty to defend Prismatic

The plain terms of the Harleysville Policy require Harleysville to defend Prismatic in the Underlying Action. Harleysville provided CDE with a general commercial liability policy which "provides coverage for bodily injury that takes place during the policy period and is caused by an accident." (Pl.'s 56.1 ¶¶ 4–5.) The complaint in the Underlying Action alleges that Keane sustained personal injuries resulting from an accident which took place on March 22, 2017, during the period of the Harleysville Policy. (*See generally* Underlying Compl.; *id.* ¶¶ 18–22.) In addition, the "additional insured" provision of the Harleysville Policy provides coverage for "any person or organization for whom [CDE is] performing operations only as specified under a written contract . . . that requires that such person or organization be added as an additional

insured on [CDE's] policy." (Harleysville Policy Part 1 of 3, at 72.) The Construction Subcontract between CDE and Prismatic qualifies as such a written contract, as it requires CDE to "take out pay for and carry policies of contingent liability insurance and general liability insurance . . . relating to compensation for accidental injuries or death suffered in the course of employment." (CDE Contract ¶ 19.A.) In addition, the Harleysville Policy provides that additional insured coverage attached "with respect to liability caused, in whole or in part, by the acts or omissions of the 'Named Insured', or those acting on behalf of the 'Named Insured', in the performance of the 'Named Insured's' ongoing operations." (Harleysville Policy Part 1 of 3, at 72.) Pursuant to the Construction Subcontract, Prismatic was working on behalf of CDE — the Harleysville Policy's "Named Insured." As such, the allegations of wrongdoing by Prismatic in the complaint in the Underlying Action are sufficient to trigger additional insured coverage pursuant to the Harleysville Policy. *See U.S. Specialty Ins. Co. v. Harleysville Worcester Ins.*, No. 20-CV-7961, 2021 WL 4043457, at * 9 (S.D.N.Y. Sept. 3, 2021) (finding that an insurer had a duty to defend pursuant to an additional insured provision where the plaintiff in the underlying action was an injured construction employee of a contractor retained pursuant to a subcontract).

Accordingly, the Court grants Plaintiff's motion for summary judgment and denies Harleysville's motion for summary judgment on Plaintiff's duty to defend claim.

### ii. Selective is not required to defend Prismatic

Harleysville argues that if the Court concludes that "Prismatic is an additional insured under the Harleysville Policy," in a determination of the priority of coverage between the Harleysville Policy and the Selective Policy, "the coverage afforded to Prismatic under the Selective Policy would be primary to any coverage available to Prismatic under the Harleysville

17

Policy" because "the Selective Policy clearly and unambiguously states that it will provide Prismatic with primary and non-contributory insurance." (Def.'s Mem. 11–14.)

Selective argues that "if the Court were to determine that Prismatic was an additional insured, the Selective Policy is not primary to the Harleysville Policy." (Third-Party Def.'s Mem. 20–21.) In support, Selective notes that both the Harleysville and Selective policies contain additional insured coverage provisions which "purport to be excess to each other with respect to Prismatic as an additional insured," and would therefore "cancel each other out . . . obligat[ing] [Harleysville and Selective] to share coverage for Prismatic." (*Id.* at 23.)

Prismatic does not qualify as an additional insured pursuant to the Selective Policy, and therefore Harleysville is solely responsible for defending Prismatic in the Underlying Action. At the time of the alleged accident at issue in the Underlying Action, Solar Electric was insured pursuant to the Selective Policy. (Def.'s 56.1 ¶ 6.) The Selective Policy provides for additional insured coverage where the named insured, Solar Electric "caused in whole or in part" the alleged injury. (Selective Policy.) This provision requires proximate cause. *See Burlington Ins. Co. v. NYC Trans. Auth.*, 29 N.Y.3d 313, 317 (2017) ("[W]here an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused the named insured."). The complaint in the Underlying Action does not allege that Solar Electric was the proximate cause of Keane's injuries. Rather, the complaint alleged that the accident and Keane's injuries and damages were "occasioned solely by virtue of the carelessness, recklessness and negligence of [Prismatic and Blue Diamond] in the operation, supervision, maintenance and control of the aforementioned construction project." (Underlying Compl. ¶ 23.) As such, the additional insured coverage provisions of the Selective Policy have not been triggered by the Underlying

18

Action.  *See Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.*, 86 N.Y.S.3d 364, 366 (App. Div. 2018) (finding no duty to defend pursuant to an additional insured provision where the named insured "was not responsible" for the alleged employee injury).  Accordingly, the Court grants Selective's motion for summary judgment and denies Harleysville's motion for summary judgment seeking a declaration that Selective is obligated to provide Prismatic with primary, additional insured coverage in the Underlying Action.

### III. Conclusion

For the reasons stated above, the Court grants Plaintiff's motion for partial summary judgment and Selective's motion for summary judgment.  The Court denies Harleysville's motion for summary judgment.

Dated: September 14, 2023
       Brooklyn, New York

                                          SO ORDERED:

                                          _____s/ MKB_____
                                          MARGO K. BRODIE
                                          United States District Judge